IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Case No. 16-02595-TJS |
| NELASH MOHAMED DAS | : | |

oOo

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Rachid Harrison, being first duly sworn, hereby depose and state as follows:

1. This affidavit is submitted in support of a criminal complaint and arrest warrant for **NELASH MOHAMED DAS ("DAS")**. Based on the information herein, your affiant respectfully submits that there is probable cause to believe that **DAS** has violated 18 U.S.C. § 2339B, by attempting to provide material support and resources to a foreign terrorist organization.

2. Your affiant has been a Special Agent with the Federal Bureau of Investigation since 2016. Prior to joining the FBI, your affiant was a Special Agent with the Drug Enforcement Administration for approximately two years. During my time in law enforcement, your affiant has sworn out both federal and state affidavits in support of search warrants and arrest warrants. As a Special Agent, your affiant is assigned to a counterterrorism squad during which your affiant has investigated and participated in the investigation of criminal and international terrorism violations, including but not limited to, the investigation of international terrorist groups which target United States persons both domestically and abroad. Your affiant received training at the FBI Academy, Quantico, Virginia, in cyber, criminal, and counterterrorism matters.

- 1 -

## Background on ISIL

3. On or about October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act, and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224. On or about May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224, to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary of State also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham ("ISIS"), the Islamic State of Iraq and Syria ("ISIS"), ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. On September 21, 2015, the Secretary of State added the following aliases to the ISIL listing: Islamic State, ISIL, and ISIS. To date, ISIL remains a designated FTO.

## Probable Cause

4. **DAS** is a citizen of Bangladesh, a Legal Permanent Resident of the United States, and a resident of Maryland. **DAS** was admitted to the United States in 1995, when he was approximately four years old.

5. The CHS is an FBI Confidential Human Source who voluntarily provided information to the FBI. The FBI has provided the CHS with monetary compensation during the course of this investigation. Your affiant believes that the information provided by the CHS detailed herein is reliable, and the information has been corroborated where possible, including through the use of

- 2 -

consensual monitoring of conversations between the CHS and **DAS**, as well as a review of records received pursuant to legal process.

6. On September 28, 2015, using his Twitter account, **DAS** tweeted, "Sitting on twitter is not enough I envy seeing brothers getting shahada n slaying kuffar while im at home not gettin any action." Based on my training and experience, and on conversations with other law enforcement, your affiant knows that "shahada" translates roughly to "dying as a martyr," and that "kuffar" translates to "infidels" or "disbelievers." In this tweet, **DAS** is saying that he envies those associated with ISIL who are killing those who do not believe in his form of Islam.

7. On or about October 26, 2015, using his Twitter account, **DAS** tweeted the name and city in which Individual #1 lives, stating that Individual #1 "aspires to kill Muslims." **DAS** knew, at the time the statement was made, that Individual #1 hoped to become a member of the United States military. The tweet was sent from a particular Internet Protocol address that, based on records received from an Internet-service provider, was associated on that date with **DAS**'s home address. Based on my training and experience, and on conversations with other law enforcement, your affiant knows that ISIL members and supporters have posted identifying information about United States military personnel in hopes that those inspired by ISIL would carry out attacks within the United States on those military personnel. Your affiant believes that **DAS** was advertising Individual #1's identity and whereabouts in order to inspire violence against Individual #1.

8. From in or about November 2015 and continuing through early 2016, using his social media accounts which law enforcement agents have reviewed, **DAS** voiced support for ISIL and for then-recent terrorist attacks in Paris, France, and San Bernardino, California.

9. On or about January 30, 2016, using one of his Twitter usernames, **DAS** tweeted a picture of an AK-47 assault rifle along with the text, "This is more than just a gun. This is a ticket to Jannah." Based on my training and experience, and on conversations with other law enforcement, your affiant knows that "Jannah" is a reference to the Islamic concept of paradise.

10. On April 30, 2016, **DAS** attended the Handgun Qualification License class at a firing range in Prince George's County, Maryland. After the class, **DAS** told another individual that **DAS** wanted to buy a Glock 9mm handgun and an AK-47.

11. During May 2016, **DAS** met the CHS for the first time. **DAS** believed the CHS to be a like-minded supporter of ISIL. On May 24, 2016, **DAS** told the CHS that **DAS** knew people overseas in Al Dawla, by which the CHS understood **DAS** to refer to ISIL, and communicated with the Al Dawla members through online communications. Based on my training and experience, and on conversations with other law enforcement, your affiant knows Al Dawla to be a common name for ISIL.

12. Based on CHS reporting and on information and records obtained from the firing range at which **DAS** took the licensing class, on various occasions throughout the summer of 2016, **DAS** returned to the firing range in order to practice firing weapons. Specifically, **DAS** returned to the firing range on at least June 5, 2016; June 27, 2016; July 14, 2016; July 27, 2016; August 10, 2016; September 1, 2016; and September 23, 2016.

13. On June 22, 2016, **DAS** submitted his fingerprints to the Maryland State Police to obtain a handgun permit. On or about the same day, **DAS** created a Facebook account incorporating "Glock" into his Facebook user name.

14. On various occasions in June and July 2016, **DAS** told the CHS that **DAS** wanted to acquire an AK-47.

15. On July 23, 2016, **DAS** told the CHS that **DAS** wanted to kill a particular military member who lived in Prince George's County, Maryland, and whose identifying information **DAS** had obtained the prior year from a list posted online by ISIL. **DAS** stated that **DAS** could acquire a firearm from an individual **DAS** knows. **DAS** also stated **DAS**'s desire to travel overseas for ISIL if **DAS** had the opportunity.

16. On July 30, 2016, **DAS** advised the CHS that **DAS** could no longer find the ISIL list from the year before. **DAS** asked the CHS if the CHS had any ISIL contacts who could re-send the list.

17. On August 19, 2016, even though **DAS** had stated that **DAS** could acquire a firearm, the CHS stated that the CHS could acquire weapons for both of them.

18. In subsequent meetings with the CHS, **DAS** stated that **DAS** was continuing to look for names of targets who **DAS** and the CHS could kill. For example, on August 29, 2016, **DAS** stated that **DAS** would again look for identifying information for the person in Prince George's County, Maryland, whom **DAS** had found the year before. Furthermore, on September 1, 2016, **DAS** explained that **DAS** would again look for a list using a particular Twitter account. And on September 11, 2016, **DAS** advised that **DAS** would find targets to kill and use guns acquired by the CHS.

19. In the September 11, 2016, meeting with the CHS, **DAS** confirmed that **DAS** was committed "100%" to conducting an attack and, "That's like my goal in life." In a meeting the following day with the CHS, **DAS** stated that **DAS** wanted to get paid by ISIL for future killings, but that **DAS** would do it for free as well. In this subsequent meeting, **DAS** confirmed that **DAS** wanted to target United States military personnel specifically.

20. On September 14, 2016, **DAS** informed the CHS that **DAS** already owned particular clothes and a bag for use in conducting the attack on their first target. **DAS** also used the CHS's telephone to search online for identifying information for targets to kill.

21. On September 23, 2016, **DAS** confirmed that **DAS** continued to look online for identifying information for a target or targets. **DAS** stated that **DAS** would purchase ammunition to be used in the attack and that they would acquire the ammunition in Virginia. That same day, while with the CHS at a store in Maryland, **DAS** shoplifted a pair of gloves for potential use during the course of his criminal conduct in support of ISIL.

22. On September 28, 2016, **DAS** and the CHS drove from Maryland to a firearms store in Virginia. At the store, **DAS** purchased one box (50 rounds) of 9mm ammunition and one box (50 rounds) of .40 caliber ammunition.

23. Also on September 28, 2016, at **DAS**'s request, the CHS provided **DAS** with the identifying information of a target ("Target #1"), whom the CHS identified as a member of the United States military and which information the CHS claimed to have received from an ISIL contact in Iraq. In reality, the CHS provided false information on behalf of the FBI. Based on discussions with the CHS, **DAS** also believed that the CHS's ISIL contact in Iraq would facilitate the payment of approximately $80,000 in exchange for **DAS** and the CHS conducting the attack. The same day, **DAS** and the CHS traveled from the Virginia firearms store to the Maryland address of Target #1 in order to conduct surveillance.

24. On September 30, 2016, the CHS drove to **DAS**'s residence in order to pick up **DAS** so that **DAS** and the CHS could conduct the attack. While the CHS was en route to **DAS**'s residence, **DAS** sent a text to the CHS that stated, "I'm Ready." When the CHS arrived at **DAS**'s residence, **DAS** loaded ammunition into the magazine of one of the firearms. **DAS** then

inserted the magazine into the firearm, and loaded a bullet into the chamber. The firearms were then placed back into the trunk of the vehicle. **DAS** believed that the firearms could fire ammunition; in reality, the firearms had been rendered inert by the FBI. **DAS** and the CHS then traveled to the Maryland address of Target #1 in order to conduct the attack. Once **DAS** and the CHS reached the address of Target #1, **DAS** exited the vehicle and approached the trunk, where the firearms were located. When **DAS** was standing next to the trunk, FBI agents approached, at which point **DAS** ran. FBI agents took **DAS** into custody a short distance away from the vehicle.

25. Based on the information herein, your affiant respectfully submits that there is probable cause to believe that **DAS** has violated 18 U.S.C. § 2339B, by attempting to provide material support and resources to a foreign terrorist organization.

Respectfully submitted,

Rachid Harrison
Special Agent, FBI

Subscribed and sworn to before me
On ___October 1___, 2016.

Timothy J. Sullivan
UNITED STATES MAGISTRATE JUDGE