IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Crim. No.: GJH-16-0502 |
| NELASH DAS | * | |

DEFENDANT'S MEMORANDUM IN RESPONSE TO
THE GOVERNMENT'S *EX PARTE, IN CAMERA* PLEADING
PURSUANT TO CIPA SECTION 4 AND FED. R. CRIM. P. 16(d)(1)

The Defendant, Nelash Das, through undersigned counsel, respectfully requests that the Court hold a hearing pursuant to Section 2 of the Classified Information Procedures Act (CIPA). The defense further requests that the Court compel disclosure of the Government's CIPA section 4 submission to cleared defense counsel.[1] Alternatively, the Court should require the government to disclose its legal arguments in support of its § 4 submission to cleared defense counsel in order to allow the defense the opportunity to address whether the Government has articulated a particularized need for filing *ex parte* submissions in this case.

I.     PROCEDURAL HISTORY

On December 21, 2016, the government filed its "Motion for Pretrial Conference Pursuant to Classified Information Procedures Act and Supporting Memorandum of Law Regarding Statutory Procedures for Handling Classified Information" (ECF No. 25) (hereinafter "Government's Notice"). The Motion served to put the Court and the defense on notice that the government intended to invoke

---

[1] On August 18, 2017, Ms. Fitzgibbons entered her appearance in this case. Ms. Fitzgibbons currently maintains a TS security clearance through the United States Army. She has consistently maintained a security clearance since 1992.

the procedural framework of the Classified Information Procedures Act. The defense did not file a response to the Government's Notice and Request for a Section 2 conference. The Court has not held a Section 2 pretrial conference.[2]

In a series of conference calls, the government represented that it was undertaking a review of the classified materials it had collected in this case to determine whether any of the information was discoverable. The Government's Notice articulates the government's position with respect to Section 4 of CIPA, including the government's ability to request *ex parte in camera* review of potentially discoverable materials. In pretrial status calls, the government has taken the position that, although it is in possession of classified materials related to the case, none of those materials must be disclosed to the defense. It is unclear to the defense whether the government takes this position because (1) it believes that all discoverable information has already been produced in non-classified form or (2) has classified information that has not been produced but believes that none of it would be helpful or material to the defense, or otherwise subject to disclosure as outlined below.

On October 31, 2017, the government filed an *ex parte* submission, pursuant to CIPA Section 4 (not docketed). In the Court's status calls, the government has represented that it has not requested that the Court review materials or documents, but rather, that the Court review its classified information review process to essentially provide an advisory opinion regarding whether the government has

---

[2] At the request of the parties, the Court has permitted extensions of the motions filing deadlines to allow for a negotiated resolution of the case. To that end, the government initially delayed or interrupted its CIPA review process.

complied with its discovery obligations. The government's CIPA review process continued parallel to the parties' negotiations. Consequently, the government's Rule 16 and *Brady* obligations were presumably its most pressing consideration during its classified information review process. In light of the parties' failure to reach a negotiated resolution, the government's review process must also contemplate discovery necessary for trial including *Jencks* and *Giglio* materials. The government properly acknowledges this obligation in the Government Notice (ECF No. 25, at 6).

On January 18, 2018, the Court held a status call with the parties. During the call, the Court agreed to allow the defense the opportunity to submit briefing related to the application of CIPA to this case. As set forth below, the defense asks the Court to address three issues: 1) the defense request that the Court convene a Section 2 pretrial conference to establish the framework for the handling of classified materials in this case; 2) the defense request to clarify the scope of the government's discovery obligation under Federal Rule of Criminal Procedure 16, *Brady*, *Giglio* and the Jencks Act to ensure that the classified review process has identified all potentially discoverable documents; and 3) defense objections to the Court's granting the government *ex parte* review of its Section 4 submissions and requests disclosure or, alternatively, limited disclosure and the opportunity to respond to the government's legal arguments.

## II. ARGUMENT

### A. The Principles Governing CIPA.

The primary purpose of CIPA is to "protect and restrict the discovery of

classified information in a way that does not impair the defendant's right to a fair trial." *United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) (*quoting United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002)). *See also United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008) (CIPA is designed "to protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial."); *United States v. Stewart*, 590 F.3d 93, 130 (2d Cir. 2009). Nothing in CIPA alters the Federal Rules of Evidence to the detriment of a defendant in a criminal case. *See Aref*, 533 F.3d at 80 (government's privilege under CIPA "must give way" when classified information is helpful or material to the defense).

Indeed, CIPA's legislative history expressly states that the defendant "should not stand in a worse position, because of the fact that classified information is involved, than he would without this Act." S. REP. NO. 823 at 9, 96th Cong., 2d Sess. 4, reported in 1980 U.S. CODE CONG. & AMIN. NEWS 4294, 4297. *See also United States v. Poindexter*, 698 F. Supp. 316, 320 (D.D.C. 1988). Simply put, CIPA does not create any new discovery obligations or entitlements. Rather, CIPA provides the procedural framework required to protect Mr. Das' right to fair trial, including his right to discovery, and, if necessary, the government's interest in protecting classified information. CIPA does not permit the government to withhold otherwise discoverable information but provides for alternative means of production, again, upon a showing that such means are necessary to protect national security information.

B.     The Court Should Convene a CIPA Section 2 Pretrial Conference.

The Government Notice states that "[c]lassified material was collected as part of the underlying investigation. . .disclosure of such material will raise issues of national security that the Court must address before the material is provided to the defense." ECF Document No. 25, pages 1-2.  In the same filing, the government requested a pretrial conference pursuant to Section 2.  Section 2 requires a pretrial conference, upon motion of either party, to establish the timing of: 1) requests for discovery; 2) the provision of notice required by Section 5 (defendant's intent to introduce classified information); or 3) the initiation of the procedure established by Section 6 (use of classified information at trial).  Section 2 also provides for a pretrial conference for the Court to consider "any matters which relate to classified information that would promote a fair and expeditious trial."  The defense concurs with the government that no substantive issues are to be decided at the Pretrial Conference, rather, the Court should schedule a motions hearing to address any objections to the CIPA process and to ensure that an adequate record is established.

In light of the case's complexity, the parties requested additional time to brief CIPA-related motions and to attempt to negotiate a resolution to the case.  As the case may now proceed towards trial, the defense requests a pretrial conference under CIPA Section 2 to establish discovery deadlines. The government has engaged in a classified discovery review process and filed an *ex parte* submission pursuant to CIPA, Section 4. A pretrial conference is necessary to determine whether there is any discoverable classified material that falls within Rule 16,

5

*Brady*, *Giglio* or *Jencks*, and the deadlines for the production of these materials.

### C. Section 4 of CIPA Does Not Restrict Mr. Das' Statutory and Constitutional Rights to Discovery, and Ultimately, a Fair Trial.

Section 4 of CIPA, which sets forth the procedures for "[d]iscovery of classified information by defendants," provides in full:

> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

18 U.S.C. App. 3, § 4. This provision "does not create any new rights of or limits on discovery of classified information, but rather clarifies a court's existing powers under Rule 16(d)(1) to protect a government privilege in classified information." *United States v. Hanjuan Jin*, 791 F. Supp. 2d 612, 617-618 (N.D. Ill. 2011) (citing *United States v. Mejia*, 448 F.3d 436, 455 (D.C. Cir. 2006)); *see also United States v. Abu-Jihaad,* 630 F.3d 102, 141 (2d Cir. 2010) (the "state secrets" privilege to withhold information applies under CIPA Section 4 only if "there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged.").[3]

---

[3] This provision clarifies the district courts' power under Fed. R. Crim. P. 16(d)(1) to issue protective orders denying or restricting discovery for good cause. S. Rep. No. 96-823, at 6 (1980) The Advisory Committee notes to Rule 16 make clear that

In reliance on *Roviaro v. United States*, 353 U.S. 53 (1957), the Fourth Circuit has adopted a standard that requires disclosure of classified information to the defense when that information is "relevant and helpful" to the defense or "essential to a fair determination of a cause." *United States v. Moussaoui*, 382 F.3d 453, 472 (4th Cir. 2004); *United States v. Smith*, 780 F.2d 1102, 1107-10 (4th Cir. 1985). This standard is similar to that adopted by other circuits. *See, e.g.*, *United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989); *United States v. Pringle*, 751 F.2d 419, 427-428 (1st Cir. 1984); *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998). If classified information is relevant or helpful to the accused, or is essential to a fair determination of a cause, it must be admitted and the government's national security interest "cannot override the defendant's right to a fair trial." *United States v. Abu Ali*, 528 F.3d 210, 247-248 (4th Cir. 2008)(internal quotation marks and citations omitted).

In this case, the government has requested the Court review materials (or their review process itself) *ex parte* in reliance on Section 4, CIPA. The Court must first review whether the government has established that the information is "classified." The defense concurs with the government's definition of "classified information" set forth in the Government Notice. The Court must then engage in a three-step process to determine whether the material should be released, in some form, to the defense. The Court must first consider whether the material or

---

"good cause" includes "the protection of information vital to the national security." Fed. R. Crim. P. 16 advisory committee's notes to 1966 amendment.

information is discoverable. Second, the Court must determine whether the "state secrets" privilege applies. Finally, the Court must consider whether the information is relevant and helpful to the defense, or necessary for a fair determination of a cause, and if so, whether the government may provide the evidence with redactions or in the form of substitutions. *See United States v. Yunis*, 867 F.2d 617, 623-25 (D.C. Cir. 1989); *Aref*, 533 F.3d at 79-80; *see also United States v. Rosen*, 2005 WL 5925549 (E.D. Va. Nov. 5, 2005).

### 1. Determining Whether the Material or Information is Discoverable.

If the material or information is deemed classified, the Court must next determine whether it is relevant or is otherwise discoverable. This standard has been described as a "low hurdle." *Hanjuan Jin*, 791 F. Supp. 2d at 619 (quoting *Yunis*, 867 F.2d at 623). Moreover, CIPA was not intended to, and does not, change the government's discovery obligations under *Brady v. Maryland,* 373 U.S. 83 (1963) or the Federal Rules of Criminal Procedure. *See, e.g.*, *United States v. Libby*, 429 F. Supp. 2d 1, 7 (D.D.C. 2006) ("[CIPA] creates no new rights or limits on discovery of a specific area of classified information . . . [,] it contemplates an application of the general law of discovery in criminal cases to the classified information based on the sensitive nature of the classified information") (quoting *Yunis*, 867 F.2d at 621); *see also Klimavicius-Viloria*, 144 F.3d at 1261. Nor does CIPA alter the Federal Rules of Evidence. In this regard, a defendant is entitled to discovery material under Rule 16 if it is "relevant to the development of a possible defense. …" *United States v. Clegg*, 740 F.2d 16, 18 (9th Cir. 1984).

8

Additionally, the defense is entitled to evidence tending to impeach government witnesses pursuant to *Giglio v. United States*, 405 U.S. 150 (1972). Such material incudes but is not limited to prior criminal records, payments for testimony and inconsistent statements. *See, e.g. Giglio*, 405 U.S. at 154-155; *Chavis v. North Carolina*, 6F.2d 213, 225 (4th Cir. 1980); *United States v. Anty*, 203 F.3d 305 (4th Cir.), *cert. denied*, 531 U.S. 853 (2000); *United States v. Hoyte*, 51 F3.d 1239, 1243 (4th Cir. 1995). Among other things, this case involves a Confidential Human Source (CHS) who interacted frequently with Mr. Das. There is a high probability that *Giglio* materials exist, at a minimum, for this government witness. The government acknowledged in the complaint filed in this case that the CHS received compensation for the investigation of this case (ECF No. 2, ¶ 5); additional types of benefits may also have been conferred on this witness. The defense assumes that the government would consider these materials related to their CHS to be classified. The defense has a good faith basis to believe that such materials exist and presumes they have not been presented to the Court in the Section 4 process.

Given the posture of this case, the government may not have considered how it intends to produce such materials. The defense acknowledges that in this District *Giglio* materials are typically provided roughly a week (sometimes less) before trial. However, if any of these materials are classified, they should be considered and addressed during the CIPA, Section 4 process, so that any issue can be fully considered and presented by the defense in a potential pretrial hearing pursuant to CIPA, Section 6.

Similarly, the defense would be entitled to Jencks Act materials for the government's witnesses. Again, such materials and statements are typically provided to the defense one week prior to trial. It is possible, in light of the government's reliance on a CHS, that such materials exist and may be classified. From a judicial resources perspective, it makes sense to review these materials early in the process to allow adequate time for identification and litigation of any issues that may arise with respect to potential withholding, redactions or substitutions.

### 2. Determining Whether the "State Secrets" Privilege Applies.

When classified information is discoverable, the second step involves deciding whether the "state secrets" privilege applies because: (1) exposure of the evidence would present a "reasonable danger" to national security; and, (2) the privilege has been "lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Aref*, 533 F.3d at 80 (citation and internal quotation marks omitted).

### 3. Determining Whether the Information Is Helpful or Material to the Defense.

If the Court decides the "state secrets" privilege applies, the final step is to determine whether the information is "helpful or material" to the defense, meaning it would be "useful to counter the government's case or to bolster a defense." *Id.* (citation and internal quotation marks omitted). In *Aref*, the Second Circuit explained that "to be helpful or material to the defense, evidence need not rise to the level that would trigger the Government's obligation under *Brady v. Maryland*, to disclose exculpatory information." *Id.* Rather, "[i]nformation can be helpful without

10

being 'favorable' in the Brady sense." *Id.* (quoting *United States v. Mejia*, 448 F.3d 436, 457 (D.C. Cir. 2006)). The Sixth Circuit neatly summarized this standard in *United States v. Amawi*, 695 F.3d 457, 471 (6th Cir. 2012): "The favorable "materiality" standard of *Brady* is much more difficult to satisfy than the "relevant and helpful" standard of *Yunis*. . .Simply stated evidence that needs to be disclosed under *Brady* would also need to be disclosed under *Yunis* but not the other way around." If the Court applies the entirety of this analysis *ex parte*, the Court should apply the "at least helpful" test "**in a fashion that gives the defendant[s] the benefit of the doubt**." *Mejia*, 448 F.3d at 458 (internal citations omitted). Thus, when information may be helpful or relevant to the defense, the classified material or information may not be deleted from discovery and must be provided, but the Court may permit the government to make appropriate deletions or substitutions. 18 U.S.C. App. 3, §4.

> D. <u>The Court Should Deny the Government's Request for *Ex Parte* Treatment of its §4 Application Absent a Demonstration of Exceptional Circumstances.</u>

Section 4 authorizes a court to accept government pleadings—and by implication to conduct the entire four-step analysis set forth above—*ex parte*. 18 U.S.C. App. 3, §4. However, simply because § 4 states only that "[t]he court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone[,]" there exists no categorical impediment to disclosure or adversary proceedings. Nothing in the statute permits the government to make such *ex parte* submissions as a matter of right. Rather,

the use of the permissive "may" in the plain text of CIPA § 4, rather than the mandatory "shall," makes clear that courts retain discretion to reject *ex parte* submissions on a case-by-case basis.

Also, Congress patterned the *ex parte* provision of CIPA § 4 on a similar provision in Fed. R. Crim. P. 16(d)(l), which governs protective orders in criminal cases. Rule 16(d)(1), too, does not use the words "must" or "shall." Instead, Rule 16(d)(l) states that a court "may" permit a party to show good cause for a protective order through an *ex parte* statement. Congress amended the language of proposed Rule 16(d)(l) from requiring *ex parte* proceedings at the request of a party to permitting such proceedings. The House Judiciary Committee observed that in determining whether to proceed *ex parte*, a court should "bear[] in mind that ex parte proceedings are disfavored and not to be encouraged." Rule 16, Fed.R.Crim.P., Advisory Committee Notes.[4]

In contrast, when Congress intends to require *ex parte* procedures in the national security setting, it knows how to articulate that mandate. For example, in the Foreign Intelligence Surveillance Act ("FISA"), Congress declared that the

---

[4] *See also* S. REP. No. 96-823, at 6 (1980) (discussing the relation between CIPA §4 and Federal Rule of Criminal Procedure 16(d)(l)); *United States v. Pringle*, 751 F.2d 419, 427 (1st Cir. 1984) (stating the purpose of CIPA §4: "[t]he legislative history clearly establishes that these sections [CIPA §§4 and 5] were intended to make explicit the protective orders allowed for limitation of discovery of classified information pursuant to Federal Rule of Criminal Procedure 16"), (*citing* S.REP. No. 96-823)) *vacated and remanded on other grounds sub nom, United States v. McAfee*, 479 US. 805 (1986). Because CIPA § 4 affords at least as much protection for classified information (more, according to the government) as Rule 16(d)(l), discussion of § 4 necessarily subsumes Rule 16(d)(l).

Court "shall" review FISA applications, orders, and related materials *ex parte* if the Attorney General submits an affidavit asserting that an adversarial proceeding would harm national security. *See* 50 U.S.C. §1806(f) (2000).

As a result of the foregoing analysis, rooted in the Fifth Amendment's Due Process Clause, coupled with the discussion below, it is respectfully submitted that—absent exceptional circumstances not present in this case—the government should not be permitted to file its § 4 application *ex parte*. In addition to the discretion § 4 explicitly vests in the Court—discretion that is meaningless if exercised only in one direction—the traditions of and experience in the adversary system justify requiring disclosure of the § 4 application to cleared defense counsel.

### 1. *Ex Parte* Proceedings Are Exceedingly Disfavored.

By their very nature, *ex parte* proceedings impair the integrity of the adversary process and the criminal justice system. And as the Supreme Court has recognized, "'[f]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights . . . . No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.'" *United States* v. *James Daniel Good Real Prop.,* 510 U.S. 43, 55 (1993) (in absence of exigent circumstances, Due Process clause requires government to provide notice and meaningful opportunity to be heard before seizing real property subject to civil forfeiture), *quoting Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 170-72 (1951 (Frankfurter, J., *concurring*). As the Ninth Circuit Court of Appeals observed in the closely analogous context of a

13

secret evidence case, "[o]ne would be hard pressed to design a procedure more likely to result in erroneous deprivations. . . . [T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error." *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1969 (9th Cir. 1995) (internal quotation marks and citation omitted).

### 2. The Court Is Not Sufficiently Equipped to Act as Surrogate Defense Counsel.

To ensure both the appearance and reality of fairness, it is respectfully submitted that the Court should not continue to permit the government to proceed *ex parte* without first making an adequate showing of the need for such drastic measures. With respect to the *ex parte* hearings conducted to date, cleared defense counsel should be provided the opportunity to review the government's § 4 submission under the protections of a CIPA protective order, which would not endanger national security. *See United States v. Libby*, 429 F. Supp. 2d at 4 (recognizing that "there are fewer threats to national security in disclosing classified documents to a defendant and his attorney who have obtained security clearances, than when disclosure is made to someone who has not received security clearances").

Indeed, barring cleared defense counsel from participating in discovery determinations harms the adversary process without any commensurate benefit to national security. Nor is there any distinction between the type of clearance granted to counsel, and to judicial personnel or even prosecutors generally. Moreover, cleared defense counsel spent several years reviewing extremely sensitive classified

14

information in the context of the Guantanamo Bay U.S. Military Commissions.

Defense counsel are unable to predict and challenge blindly the government's positions. Without access to either the classified evidence or the government's arguments for nonproduction, Mr. Das will be deprived of his right to counsel at this stage, and of other fair trial rights to which he is constitutionally entitled. Without defense counsel's participation in the process of evaluating the material and even crafting substitutions, it cannot be said that the defendant has been placed in the same position as he would be in if he were given access to either witnesses or the specific classified information.

*Ex parte* proceedings with respect to discovery also present an overwhelming danger of erroneous decisions. Despite what defense counsel knows will be the Court's best efforts, the Court cannot properly function as the defendant's surrogate advocate. The Court cannot possess sufficient appreciation for defense theories in a particular case, especially at this phase of the case, when the Court would not have sufficient knowledge and understanding of critical facts, factual issues, contentions, knowledge of impeachment issues, the nature of government and defense exhibits, and perhaps even the defendant's testimony. There have been no substantive pleadings filed, no motions hearings, and no other opportunities for the Court to learn about the defense theories of the case, and how information in the government's possession might be helpful to those defense theories. In contrast, defense counsel have been thoroughly investigating this case since Mr. Das was first charged, has met dozens of times with Mr. Das, and reviewed multiple terabytes of

discovery materials.

Finally, this case is considerably more complicated than an ordinary case, thus irremediably impairing further the Court's ability to assume the role of defense counsel. Thus, the relevance or materiality, or the exculpatory character of evidence, is not readily apparent except to those with intimate knowledge of the factual details as well as the full scope of discovery. Adherence to the adversary process would have considerable salutary effects on the accuracy of decision making in this instance. It is not the Court's function, but defense counsel's, to be the vigorous advocate on behalf of Mr. Das and point out any deficiencies in the government's submissions.

Indeed, given the volume of discovery, the complexity of the charges in the indictment and the anticipated defenses, it would be impossible for the Court to make the appropriate determination regarding the Government's request to preclude production of material absent a meaningful and substantive contribution from the defense. The Court's task is particularly difficult where the government is presumably providing the Court with information about its review process rather than specific documents. The defense assumes that the Court must consider whether entire categories or types of evidence should be withheld.

In *United States v. Marzook*, 412 F. Supp.2d 913 (N.D. Ill. 2006), in deciding whether to close a hearing to the public because of potential classified information, Judge St. Eve explained that: "[i]t is a matter of conjecture whether the court performs any real judicial function when it reviews classified documents in camera. Without the illumination provided by adversarial challenge and with no expertness

in the field of national security, the court has no basis on which to test the accuracy of the government's claims." *Id.* at 921 (internal citation and quotation omitted). Likewise, in *Alderman v. United States*, 394 U.S. 165 (1969), the Court addressed the procedures to be followed in determining whether government eavesdropping in violation of the Fourth Amendment contributed to its case against the defendants. The Court rejected the government's suggestion that the district court make that determination *ex parte*, observing that "[a]n apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances." *Id.* at 182.

For the reasons outlined above, courts lack familiarity with "the information contained in and suggested by the materials[,]" that the government seeks to withhold. *Alderman*, 394 U.S. at 184. The Court, which has not had opportunity to review the discovery, consult with the defendant, or otherwise investigate the facts of this case, cannot be expected to surmise the factual nuances of the defense. As the Supreme Court has recognized, "[i]n our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States*, 384 U.S. 855, 875 (1966). Accordingly, it is respectfully submitted that the defense be

provided a copy of the Government's section 4 submissions and going forward that the Court decline to hold *ex parte* proceedings pursuant to Section 4.

### 3. In the Alternative, the Government Should be Compelled to Disclose to Cleared Defense Counsel Its Legal Arguments in Support of Its §4 Application.

Should the Court determine a need to review the government's § 4 submission *in camera* in whole, or in part, it is respectfully requested that the government be compelled to disclose to cleared defense counsel its arguments in support of non-production, and an adversarial hearing addressing those arguments should be conducted. There is no sensible reason why disclosure of the government's arguments would implicate national security, especially when the arguments could be provided to defense counsel subject to an appropriate protective order.

Such practice is not inconsistent with the Second Circuit's opinion in *Abu-Jihaad*. While in that case the Court noted that "where the government moves to withhold classified information from the defense, an adversarial hearing with defense knowledge would defeat the very purpose of the discovery rules[,]" (*Abu-Jihaad*, 630 F.3d at 142, *citing Aref*, 533 F.3d at 81 (internal quotation marks omitted)), the Court nevertheless acknowledged that trial judges retain discretion to reject *ex parte* filings under § 4. Indeed, in *Abu-Jihaad* the Court characterized the defense's opposition as a "challenge to the district court's exercise of *discretion* to proceed *ex parte*," and reviewed the district court's decision to accept an *ex parte* filing under an abuse of discretion standard. *Id.* (emphasis added).

In *United States* v. *Libby*, 429 F.Supp. 2d 18 (D.D.C. 2006), *amended by* 429

18

F. Supp.2d 46 (D.D.C. 2006), the district court also recognized its discretion to reject *ex parte* § 4 filings. In *Libby*, the Court established a procedure for evaluating the necessity of an *ex parte* § 4 filing, requiring that any government submission under § 4 must necessarily include a declaration or affidavit, executed by an intelligence community official with the requisite classification authority, that: (1) describes the reasons for the classification of the information at issue; (2) sets forth the potential harm to national security that could result from its disclosure; and, (3) explains why the defense, based upon appropriate classification guidelines, does not have a 'need-to- know the information in its unaltered form." *Id.* at 25. The district judge added that, "[u]pon receipt of such a filing, the Court will review it and determine whether the filing should remain *ex parte*, or whether all or some portion of it should [be] provided to the defendant." *Id.* Similarly, in *Bostan v. Obama*, 674 F.Supp.2d 927 (D.D.C. 2009), a Guantanamo Bay *habeas* case, the Court adopted the same procedure for evaluating *ex parte* submissions under § 4.

## III. CONCLUSION

CIPA provides a procedural framework for the Court. Within that framework, the Court possess the flexibility and discretion to ensure that Mr. Das is provided the materials necessary and required to present his defense at trial, without jeopardizing the government's interest in protecting classified information. To that end, the defense requests a pretrial conference pursuant to CIPA, Section 2 and objects to the government's *ex parte* submission, pursuant to CIPA, Section 4. The defense submits that disclosure of the filing in its entirely, or at a minimum the

government's legal arguments, to cleared defense counsel is the appropriate remedy. Alternatively, the defense requests the Court reconsider the government's submission under the standards set forth in this pleading, specifically in a fashion that gives the defense the benefit of the doubt regarding whether materials are discoverable and, therefore, must be released to the defense in some form.

                Respectfully submitted,

                JAMES WYDA
                Federal Public Defender for the
                District of Maryland

                    /s/
                JULIE L.B. STELZIG (#27746)
                AMY S. FITZGIBBONS (#97952)
                Assistant Federal Public Defenders
                6411 Ivy Lane, Suite 710
                Greenbelt, Maryland 20770
                Telephone: (301) 344-0600
                Fax: (301) 344-0019
                Email: julie_stelzig@fd.org
                        amy_fitzgibbons@fd.org